**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

N.T., a minor, by and through Richard D.
Nelson, Guardian of the Estate of N.T.          Case No.: 1:13CV230

      Plaintiff,                                      Judge Michael R. Barrett

v.

CHILDREN'S HOSPITAL MEDICAL
CENTER, d/b/a CINCINNATI CHILDREN'S
HOSPITAL MEDICAL CENTER, et al.

      Defendants.

## ORDER

This medical malpractice case is presently before the Court on the following

motions: (1) Plaintiff's Motion to File Three Replies under Seal (Doc. 89); and (2)

Plaintiff's Motion to Vacate Confidential Designations (Doc. 82).[1] Rather than recite all

procedural background relevant to each motion here, the Court will instead summarize

any facts necessary to the resolution of the foregoing motions *infra*.

### I. Motion to File Three Replies Under Seal (Doc. 89)

#### a. Background

The replies that Plaintiff seeks to file under seal support three other Motions

currently pending before the Court (Docs. 82, 83, 84), and specifically respond to

opposition briefs filed by Defendants on November 18, 2016 (Docs. 85, 86, 87). Plaintiff

claims that it is necessary to file the replies under seal because they refer to "Confidential"

information designated in accordance with the Second Amended Protective Order entered

on May 27, 2016. (Doc. 89; PAGEID# 2444).

---

[1] The Court will dispose of other pending motions separately.

1

Defendants oppose the filing of the replies.  (Doc. 90).  Defendants correctly assert that a reply to any opposition brief filed on November 18, 2016 would have been due on December 2, 2016.  *See* S. D. Ohio L. R. 7.2(a)(2).  Therefore, the December 14, 2016 Motion (Doc. 89) was filed almost two weeks after the replies were due.  Defendants thus argue that the Court should not allow the filing of any reply, sealed or not, because Plaintiff's Motion (Doc. 89) did not establish (or even attempt to establish) good cause for filing out of time.  (Doc. 90; PAGEID# 2446).  Plaintiff did not reply to Defendants' opposition.

### b. Analysis

This Court's local rules govern stipulated extensions to file pleadings or motions directed to the pleadings,[2] but all other extensions are governed by Fed. R. Civ. P. 6(b)(1), which states:

> When an act may or must be done within a specified time, the court may, for good cause, extend the time:
>
> (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or
>
> (B) on motion made after the time has expired if the party failed to act because of excusable neglect.

"According to Fed. R. Civ. P. 6(b)(1), if a party does not make a request for an extension of time in which to file an otherwise tardy [pleading or other filing] - and if the court does not grant such an extension *sua sponte* - prior to the expiration of the deadline, an extension can be granted only on a motion and upon a finding of good cause and excusable neglect."  *Rounds v. State*, No. 2:11-CV-12810, 2012 U.S. Dist. LEXIS 93682, at *4 (E.D. Mich. July 6, 2012).  In *Rounds*, the court declined to consider a responsive

_____

[2] See S. D. Ohio L.R. 6.1.

brief that "was filed ten days after the stipulated deadline for a response had expired," observing that plaintiff "did not file a motion for a further extension of time or otherwise acknowledge the untimeliness of her filing." *Id.*

Like the plaintiff in *Rounds*, Plaintiff in the case at bar has not attempted to show good cause and excusable neglect. Accordingly, Plaintiff has not sustained her burden under Fed. R. Civ. P. 6(b)(1), and the Motion (Doc. 89) is thus **DENIED**.[3]

## II. Motion to Vacate Confidential Designations (Doc. 82)

Plaintiff asserts that confidentiality designations on approximately 50,000 pages of documents should be lifted, arguing that Defendants have abused the protective order's "confidential" designation in order to keep Defendant Crombleholme's alleged "incompetence and . . . misdeeds" secret. (Doc. 82; PAGEID# 1676).

### a. Background

#### 1. Stipulated Protective Orders

On October 28, 2014, the Court signed a stipulated protective order under which the Parties agreed that certain documents "may" in "good faith" be designated "confidential." (Doc. 31; PAGEID# 481, at ¶1). Because Defendant Crombleholme was the lead investigator for a 2004 National Institute of Health (NIH) study about the efficacy

---

[3] The Court notes that it has inherent authority to order or consider additional briefing where such briefing would be helpful to the Court. *Rest. Adver. Group, Inc. v. J.P. Morgan Chase & Co.*, No. 2:04-cv-1020, 2005 U.S. Dist. LEXIS 47845, at *2-3 (S.D. Ohio Feb. 11, 2005) ("This Court, like any other court, holds the inherent power to order additional briefing[.]"). However, the Court finds no such need here.

Furthermore, to the extent that the relief requested by Plaintiff is denied, the Court's decision on the Motions (Docs. 82-84) shall be based on grounds that could not have been cured by a reply brief. *Bishop v. Oakstone Acad.*, 477 F. Supp. 2d 876, 889 (S.D. Ohio Mar. 5, 2007) ("[I]t is well established that a moving party may not raise new issues for the first time in its reply brief.").

of a procedure at issue in this case (Selective Laser Photocoagulation of Communicating Vessels or "SLPCV"), certain NIH-related documents were listed among the categories of information that "may" be entitled to confidential treatment.  Specifically, the parties stipulated that the following documents may be designated "confidential," subject to the good faith requirements of the protective order:  "any and all documents and/or information relating in any manner to the NIH study entitled 'A prospective, randomized, multicenter trial of amnioreduction vs selective fetoscopic laser photocoagulation for the treatment of severe twin-twin transfusion syndrome.'"  (*Id.* at ¶1(e)).  A "confidential" designation limits the scope of individuals who may view the documents.  (*Id.* at ¶2).  The parties agreed that experts may view confidential documents.  (*Id.*)

The October 28, 2014 stipulated protective order also contains a provision governing the procedure for challenging designations as improper, which includes requirements that the parties attempt to resolve the disagreement extra-judicially:

> Any party that challenges the designation of any documents or information designated as "Confidential" or "Attorney's Eyes Only" may apply to the Court for *in camera* review of the documents or information at issue and for an order determining the application of this Protective Order to such documents or information.  Prior to making such application to the Court, the challenging party shall meet and confer in good faith with the producing party in an effort to resolve the dispute.

(*Id.* at ¶13).

After entry of the October 28, 2014 Stipulated Protective Order, the Court signed an Amended Stipulated Protective Order on March 22, 2016 (Doc. 72) and a Second Amended Protective Order on May 27, 2016 (Doc. 75).  As amended, the Orders' operative provisions relating to the production of and expert access to NIH-related documents are identical to the provisions in the original protective order.  (Doc. 72 at  ¶¶

1-2); (Doc. 75 at ¶¶ 1-2). Likewise, the challenge mechanism is identical. (Doc. 72 at ¶13); (Doc. 75 at ¶13).

## 2. Subsequent Orders Governing Production of NIH Documents

In 2014, Defendants raised issues regarding the discoverability of NIH documents with the Court, including HIPAA concerns. Plaintiff moved to compel (Doc. 20), and Defendants were ultimately ordered to produce the NIH documents with certain redactions. (Doc. 48). However, the Court ordered that certain information remain in unredacted form. (Doc. 48; PAGEID# 1323); (Doc. 55). For purposes of this Order, the Court refers to the below-listed documents as the "NIH documents" or "NIH-related documents," which were ultimately produced by Defendants:

1. The NIH file, bates-stamped as CROMstudy1 through CROMstudy 30572, with the exception of certain "missing" documents. (Doc. 82; PAGEID# 1673-1674). This production was made in July 2015. (*Id.* at 1673).

2. Documents maintained by Dr. David Shera, bates-stamped SHERA1 through SHERA18873, which were supposedly produced in response to Plaintiff's arguments regarding the "deficiencies" in CROMstudy1 through CROMstudy 30572. (*Id.* at 1674). This production was made in October 2015. (*Id.*).

3. The Cincinnati Children's "IRB files," bates-stamped CCHMC1219 through CCHMC4765. (*Id.* at 1675). This production was made in October 2015. (*Id.*).

To further protect information subject to HIPAA, the Court allowed Defendants to produce such documents consistent with the parties' October 28, 2014 stipulated

protective order and 45 C.F.R. 1647.512.[4] (Doc. 48) ("All productions of documents shall be subject to the parties' Stipulated Protective Order."); (Doc. 55) ("Documents produced pursuant to the March 31, 2015 Order of the Court may likewise be designated as "Confidential" and treated accordingly under the Stipulated Protective Order entered by the Court on October 28, 2014.").  Defendants produced all NIH-related documents as "Confidential."

### 3. Plaintiff's Pending Request to De-designate NIH-Related Documents

In a Motion (Doc. 82) filed in October 2016, Plaintiff claims that the Court should vacate the confidentiality designations on all 50,000 pages of the above-referenced documents, which were produced between July and October of 2015.  Plaintiff argues that the bulk of the productions contain "non-sensitive documents" – even public documents such as grant applications.  (Doc. 82; PAGEID# 1673, 1675).  Plaintiff asserts that the confidentiality designations should therefore be lifted on *all* NIH-related documents, arguing that Defendants have abused the "confidential" designation in order to keep Defendant Crombleholme's alleged "incompetence and . . . misdeeds" secret.  (*Id.* at 1676).  Plaintiff also states that she cannot "in good conscience" allow Defendant Crombleholme to hide behind confidentiality any longer.  (*Id.*).  Even though the stipulated protective order (both original and as amended) already allows experts to view

---

[4] HIPAA recognizes that protected information may be the subject of discovery in litigation, and further recognizes "qualified protective orders" as a means of protecting the privacy of patients. 45 C.F.R. 1647.512(e)(1)(ii)(B) ("A covered entity may disclose protected health information in the course of any judicial or administrative proceeding . . . [i]n response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if . . . [t]he covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iv) of this section, from the party seeking the information that reasonable efforts have been made by such party to secure a *qualified protective order* that meets the requirements of paragraph (e)(1)(v) of this section.") (emphasis added).

confidential documents, Plaintiff requests that – in the alternative – confidentiality be "lifted so as to allow Plaintiff's experts to summarize and describe the underlying data, as well as provide corresponding opinions and conclusions[.]" (*Id.* at 1683).

In her Motion, Plaintiff has not:  (1) identified by Bates number, or attached examples of, specific documents that were improperly designated; (2) described her meet and confer efforts; or (3) applied for an *in camera* review.  Defendants claim that, prior to the filing of the instant Motion (Doc. 82), "Defendants asked Plaintiff to provide a list of specific documents that she thought were not Confidential," but Plaintiff "claimed all of them and provided no such list."  (Doc. 85; PAGEID# 2260).  Defendants argue that Plaintiff's Motion constitutes a request for wholesale declassification, and amounts to an improper attempt to "undo, "modify," or "reverse" her earlier "bargain" to treat all NIH-related documents confidential.  (*Id.* at 2260).

### b.  Analysis

At the outset, and in order to properly frame the issues, the Court must first address Defendants' repeated assertions that Plaintiff is now attempting to "undo, "modify," or "reverse" her earlier "bargain" to treat all NIH-related documents confidential. Specifically, while acknowledging that the protective order includes a mechanism for challenging the designation of documents, Defendants suggest that Plaintiff agreed that *all* NIH documents were allowed to be designated as confidential, regardless of content. (Doc. 85; PAGEID# 2254-55)  ("Defendants, in reliance upon the Stipulated Protective Order and these subsequent orders of the Court, ultimately designated as 'Confidential' and produced for inspection over fifty thousand pages of documents related to an NIH Study[.]").  Indeed, Defendants even state that "[t]he Court, in reliance on the Stipulated Protective Order likewise *ordered* that various NIH documents be produced with the

Confidential designation[.]" (*Id.* at 2261) (emphasis added).

Contrary to Defendants' belief that the Court ordered Defendants to brand 50,000 pages "confidential" in "reliance" on the protective order, the more accurate statement is that the Court ordered that certain productions "may" be made "subject to the parties' Stipulated Protective Order" or "subject to the 'confidential' designation in the protective order." (Doc. 48; PAGEID# 1332; 1335). *See also* Doc. 55 ("Documents produced pursuant to the March 31, 2015 Order of the Court *may* likewise be designated as 'Confidential' and treated accordingly under the Stipulated Protective Order entered by the Court on October 28, 2014.") (emphasis added). In other words, when faced with arguments that Plaintiff was improperly requesting documents that may include HIPAA-protected information, the Court ordered Defendants to respond – leaving certain information unredacted – and reminded Defendants of their ability to safeguard unredacted information with confidentiality designations *subject to the terms of* the protective order. At the end of the day, the protective order still requires that documents be designated in good faith and subject to Plaintiff's ability to challenge such designations.

Furthermore, Defendants are mistaken if they believe that: (1) Plaintiff agreed that all 50,000 NIH-related pages are necessarily confidential; or (2) such a stipulation would be acceptable to this Court. As is required in the Sixth Circuit, the protective order entered by the undersigned mandates that NIH documents be designated in good faith and subject to the challenge mechanism contained in paragraph 13. *Shane Grp., Inc. v. Blue Cross Blue Shield*, 825 F.3d 299, 305 (6th Cir. June 7, 2016); *Ruiz-Bueno v. Scott*, No. 2:12-cv-0809, 2013 U.S. Dist. LEXIS 165722, at *9-10 (S.D. Ohio Nov. 21, 2013);

*Jacobs v. Lambda Research, Inc.*, No. 1:10-cv-536, 2012 U.S. Dist. LEXIS 31066, at *9 (S.D. Ohio Mar. 8, 2012).  Thus, Plaintiff is not backpedaling on an earlier agreement to automatically and permanently treat such documents as confidential.  It is thus improper to characterize Plaintiff as attempting to "undo," "modify" or "reverse" an earlier "bargain," as Defendants suggest.  (Doc. 85; PAGEID# 2255, 2260).

Whether Plaintiff has properly challenged Defendants' designations is an entirely different matter, and is addressed *infra*.  To make such a determination, it is first necessary to accurately categorize the protective order at issue.

### 1.  The Parties Have Entered into a Blanket Protective Order

The original and amended stipulated protective orders in this case qualify as "blanket" protective orders.  A blanket protective order "allows the parties to designate certain information as confidential without the need for the Court to review each piece of information before that designation."  *Anderson v. Frye*, No. 2:05-cv-0520, 2006 U.S. Dist. LEXIS 46352, at *3 (S.D. Ohio July 7, 2006).  Such orders have been described as "routine and essential" to modern litigation, and "are usually entered by the Court after the parties have agreed to their terms."  *Id.  Accord*:  *Shane Grp.*, 825 F.3d at 305.

To comport with Rule 26(c), however, even an agreed blanket protective order requires a party to designate documents "confidential" in good faith and subject to the power of other parties to challenge such designations.  *Ruiz-Bueno v. Scott*, No. 2:12-cv-0809, 2013 U.S. Dist. LEXIS 165722, at *9-10 (S.D. Ohio Nov. 21, 2013) ("Blanket protective orders routinely are approved by courts in civil cases, frequently on the stipulated request of the parties.  Such orders place the burden on the designating party to act in good faith in designating information as confidential, and allow for disputes over

the propriety of that designation to be resolved by the Court if the parties cannot agree.")
(internal citation omitted); *Jacobs v. Lambda Research, Inc.*, No. 1:10-cv-536, 2012 U.S.
Dist. LEXIS 31066, at *9 (S.D. Ohio Mar. 8, 2012) ("[I]nformation may be designated
Confidential only upon a good-faith belief that the information falls within the scope of
protection permitted by the court.  Protective Orders will not be sanctioned by this Court
absent a provision for challenging an opposing party's designation of material as
'Confidential.'").  Consistent with *Shane Group*, *Ruiz-Bueno* and *Jacobs,* the protective
orders in this case (both original and as amended) allow parties to designate NIH
documents as confidential subject to the "good faith" requirement, and include provisions
allowing such designations to be challenged.  (Doc. 31; Doc. 72; Doc. 75).  Therefore, the
next question becomes one of the burden applicable when a party challenges a
designation made under a blanket protective order.

### 2. Burden Associated with a Challenge to Confidential Documents

Plaintiff asserts that confidentiality on over 50,000 pages of documents should be
lifted, reasoning that Defendants cannot meet their " burden  [of] illustrat[ing]  with  a
particular  and specific demonstration  of fact that particular  documents  justify  Court-
imposed  secrecy[.]"  (Doc. 82; PAGEID# 1681).  However, Defendants argue that:  (1)
Plaintiff improperly "relies on cases regarding document access at trial, not pre-trial
discovery, in seeking wholesale declassification"; and (2) Plaintiff, "as the party seeking
the wholesale declassification of NIH documents, . . . must carry the burden of
demonstrating that such declassification is warranted."   (Doc. 85; PAGEID# 2256-2257).

Defendants are partially correct in that Plaintiff largely relies on authority governing
access to judicial court records, not pre-trial discovery.  The Sixth Circuit has made clear

that distinct standards regarding burden apply at the two stages of litigation (*i.e.*, the discovery stage versus the adjudication stage):

> Secrecy is fine at the discovery stage, before the material enters the judicial record. Thus, a district court may enter a protective order limiting the use or disclosure of discovery materials upon a mere showing of "good cause[.]" Fed. R. Civ. P. 26(c)(1). These orders are often blanket in nature, and allow the parties to determine in the first instance whether particular materials fall within the order's protection. . . At the adjudication stage, however, very different considerations apply.

*Shane Grp.,* 825 F.3d at 305 (internal citation omitted). That said, the Court cannot agree with Defendants' argument that Plaintiff bears the burden of showing that declassification of certain documents is warranted.

At the discovery stage, and where a designation subject to a blanket protective order is concerned, a party disagreeing "with the producing party's designation . . . may object" in accordance with the parties' protective order. *MSC.Software Corp. v. Altair Eng'g, Inc.*, No. 07-12807, 2012 U.S. Dist. LEXIS 69107, at *10-11 (E.D. Mich. May 17, 2012). "When a party to a blanket protective order disputes the level protection designated by the producing party" – following the procedures outlined in the order – "*the burden is on the producing party* to justify its designation." *MSC.Software,* 2012 U.S. Dist. LEXIS 69107, at *10-11 (emphasis added). *Accord*: *Brown v. Tellermate Holdings Ltd.*, No. 2:11-cv-1122, 2014 U.S. Dist. LEXIS 90123, at *61 (S.D. Ohio July 1, 2014) ("As the producing party, Tellermate had the burden of demonstrating entitlement to the designation."). To meet this burden, the designating party must establish "good cause"

for the level of protection selected. *Shane Grp*, 825 F.3d at 305; *MSC.Software*, 2012 U.S. Dist. LEXIS 69107, at *10-11 (citing Fed. R. Civ. P. 26(c)(1)).

### 3. Triggering of the Burden

Defendants suggest that any duty to defend their designations has not been triggered because Plaintiff never identified which documents were allegedly improperly designated. (Doc. 85; PAGEID# 2260) ("Plaintiff simply takes the position that no NIH document could be Confidential. Defendants asked Plaintiff to provide a list [of] specific documents that she thought were not Confidential. [Plaintiff] claimed all of them, and provided no such list.").

There appears to be some disagreement in this district and elsewhere about whether a challenging party should have to first identify which documents it believes to be not confidential, before a party who produced under a blanket order must justify its designations. *Compare Anderson v. Frye*, No. 2:05-cv-0520, 2006 U.S. Dist. LEXIS 46352, at *4 (S.D. Ohio July 7, 2006) (suggesting that the designating party's burden is triggered once the challenging party "indicate[s] precisely which documents it believed to be not confidential"), *with Brown v. Tellermate Holdings Ltd.*, No. 2:11-cv-1122, 2014 U.S. Dist. LEXIS 90123, at *62 (S.D. Ohio July 1, 2014) (rejecting defendant's position that, "unless [plaintiff] identifie[s] . . . each document he wanted to be redesignated, [defendant] had no choice but to continue to claim that all of the documents were properly marked").

On the one hand, cases that align with *Anderson* address concerns that a litigant may abuse a protective order's objection mechanism, using vague or wholesale challenges as a tactic to burden designating parties with an overwhelming duty to defend.

*See, e.g., Zenith Radio Corp. v. Matsushita Electric Industrial Co.*, 529 F. Supp. 866, 893 (E.D. Pa. Dec. 10, 1981) (denying motion for "wholesale declassification"; allowing party who waited years to challenge hundreds of thousands of documents to challenge only "critical categories of documents"). On the other hand, cases that align with *Tellermate* address concerns that a designating party may purposely or negligently over-designate, and that requiring a challenging party to individually identify potentially thousands of problematic designations foists an unfair burden on the challenging party who has arguably done nothing wrong. *See, e.g., Procaps S.A. v. Patheon Inc.*, No. 12-24356-CIV-GOODMAN, 2015 U.S. Dist. LEXIS 94010, at *25 (S.D. Fla. July 20, 2015) (rejecting designating party's argument that challenging party should be required "to specifically identify the precise documents it wants [designating party] to re-review and re-designate," which constitutes an "inequitable" shifting of the review burden).

In *Zenith*, millions of pages were produced under a stipulated protective order, but the challenging party sought wholesale declassification "years after they were produced." 529 F. Supp. at 893. The court denied the challenging party's motion for "wholesale declassification." *Id.* at 895. The court reasoned that, although the protective order "provides that the failure of any party to challenge a confidentiality designation contemporaneously shall not be deemed a waiver of its right to challenge the propriety of such designation at any time thereafter, this does not mean that a party may sit on its hands while the mountain of discovery materials grows and then attempt to challenge the protection of such material with the same ease with which it could have raised an objection contemporaneously." *Id.* at 893-84. In other words, a protective order's mechanism for "challenging the classification of documents may [not necessarily] be

translated intact into the context of wholesale declassification." *Id.* at 893. As to the designating party's duty to defend, "[t]here is a qualitative difference between sustaining the confidentiality of a single document at the time of its designation and sustaining the confidentiality of hundreds of thousands of documents en masse years after they have been produced." *Id.* Such a procedure is arguably "unfair" to the litigants (and potentially third parties), and unwieldy for the court to manage: "It would be virtually impossible for [the court] to consider declassification document-by-document at this juncture." *Id.* at 893. While the *Zenith* court was unwilling to grant a motion for wholesale declassification, it was willing to entertain a motion "seeking declassification of the critical categories of documents in the case." *Id.* at 895.

The *Procaps* court addressed related concerns, but focused on potential unfairness to a challenging party who has arguably done "nothing wrong" in objecting to thousands of questionable designations. There, the designating party designated 95% of its production as "attorney's eyes only." 2015 U.S. Dist. LEXIS 94010, at *13. The challenging party argued that the designating party's sweeping designations were not made in good faith. *Id.* at *19.[5] The designating party acknowledged that it over-designated – blaming its document vendor and other factors – but proposed that the challenging party "should identify, with Bates numbers, the specific documents it wants [the designating party] to re-review and re-designate, and [the designating party] will then perform a review of those pinpointed documents[.]" *Id.* at *16. The court rejected the designating party's proposal: "[I]t is inequitable to shift the burden of reviewing more than 141,000 documents to [the challenging party], who is in no way responsible for [the

---

[5] It is unclear how soon the challenging party challenged the designations post-production in *Procaps*, but the recitation of facts suggests that the challenging party proactively pursued its objections.

designating party's] less-than-precise (to be diplomatic) use of the designation methodology established in the very confidentiality order it jointly proposed." *Id.* at *25. In *Procaps*, the court ordered an expedited re-review and re-production by the designating party, and awarded the challenging party its fees. *Id.* at *34-35.

Here, the Court is facing a scenario where the concerns expressed in both *Zenith* and *Procaps* exist simultaneously. In other words, the Court is concerned that Defendants may have over-designated like the designating party in *Procaps*. At the same time, the Court is concerned – based in part on Plaintiff's delay in challenging documents produced between July and October of 2015– that Plaintiff's wholesale challenge is a litigation tactic, similar to the tactic rejected by the court in *Zenith* as unjustifiably causing a tremendous burden to the parties and court. 529 F. Supp. at 893. However, the Court need not reconcile the *Zenith* and *Procaps* philosophies at this juncture, because the Parties in this case agreed to a middle ground by way of their stipulated protective order that includes a meet-and-confer requirement. Even where a challenging party believes that a designating party has mis-designated thousands of pages – making it burdensome to provide an exhaustive list of challenged documents to the designating party – an agreement to meet and confer requires the parties to find some way to frame the issues for discussion before involving the Court. For example, the challenging party's objection may need to at least direct the designating party to documents that are representative of the challenging party's larger concerns, in a way that enables the parties to meaningfully discuss the objections as they relate to specific categories of documents. Based on the facts before the Court, however, the Court is not convinced that filing a motion challenging 50,000 pages of designations, after lodging a wholesale objection, satisfies that meet-

and-confer requirement. Perhaps Plaintiff did engage Defendants between the time it lodged the objection, and the time she filed the instant Motion, which in turn enabled Defendants to respond without individually defending 50,000 pages *en masse*; however, the Court can do nothing more than speculate as to the exact nature of Plaintiff's efforts, since Plaintiff failed to attach an affidavit or other documentation detailing her efforts to resolve this dispute extra-judicially. Accordingly, Plaintiff's Motion (Doc. 82) is **DENIED** for failure to comply with the protective order's meet-and-confer requirements, subject to refiling consistent with the below admonitions.[6]

To the extent that Plaintiff reengages Defendants regarding their designations and later applies to the Court for relief, Plaintiff is advised and cautioned that this Court will not review 50,000 pages of documents. To quote *Zenith*, it has become "virtually impossible

---

[6] The Court must note that, even if Plaintiff had exhausted the meet-and-confer requirement, the Court would still be reluctant to order such drastic relief when a challenging party has not availed itself of the opportunity to request an *in camera* review. If Defendants indeed over-designated, then Plaintiff in theory should have been eager to at least attach illustrative examples of Defendants' alleged discovery abuses to the Motion. (Doc. 82). The Court is wary of a party who, despite the opportunity to apply for an *in camera* review or attach examples to her Motion (which was filed under seal), only *describes* alleged discovery abuses in general terms. (Doc. 82; PAGEID# 1681-1683). The Court is not attempting to place the burden on the challenging party to support why declassification of certain documents is warranted; however, a challenging party seeking drastic relief is still well-served to put forth an objection supported with at least examples of the designating parties' most egregious abuses, which did not happen here. Furthermore, while the Court recognizes that the burden to support discovery designations generally rests with the designating party, the challenging party must still request an appropriate remedy. Here, "Plaintiff submits that, in light of de-identification and the fact that this data is already the subject of a medical journal publication, the Court should vacate [all of] Defendants' 'Confidential' designations." (Doc. 82; PAGEID# 1683). Plaintiff essentially asks the Court to order wholesale, drastic relief while essentially blindfolded to the content of the production. Accordingly, even if Plaintiff had exhausted the meet-and-confer requirement, the Court would still be unwilling to blindly vacate 50,000 pages of confidentiality designations.

The Court must also note that it is not persuaded by Plaintiff's alternative argument that confidentiality should be lifted to facilitate expert review of the documents. The existing protective order already allows for expert review of confidential documents. (Doc. 31; Doc. 72; Doc. 75). This argument in favor of declassification is at best based on a mistaken interpretation of the protective order, and at worst is purposely misleading.

for [this Court] to consider declassification document-by-document." *Id. Accord: Premier Health Partners v. The Medical Ctr. at Elizabeth Place*, No. 3:12-cv-00026 (S. D. Ohio March 4, 2014) (Black, J.) (denying plaintiff's request for *in camera* review where Plaintiff "dumped" thousands of pages of documents on Court; permitting Plaintiff to reapply seeking a review of a narrower set of documents, reasoning that "chambers cannot operate as a full service litigation team, and undertaking this type of proposed document review would effectively shut these chambers down for at least a month"). Plaintiff must consider her priorities, as a party may not "sit on its hands while the mountain of discovery materials grows and then attempt to challenge the protection of such material with the same ease with which it could have raised an objection contemporaneously." *Zenith*, 529 F. Supp. at 893-94. Therefore, Plaintiff must structure any application for relief in accordance with this admonition.

Additionally, Plaintiff is forewarned that this Court is not convinced that a broad challenge to *pre-trial* confidentiality is a worthwhile expenditure of resources with actual trial on the horizon. Although Plaintiff argues that she cannot in "good conscience" allow Defendants to shield Defendant Crombleholme's alleged "incompetence" any longer, Plaintiff is reminded that she will have the chance to expose Defendant Crombleholme's alleged incompetence at trial in less than three months, where "very different" confidentiality standards will apply. *Shane Grp.*, 825 F.3d at 305.

### III.  Conclusion

For the foregoing reasons:

(1) Plaintiff's Motion to File Three Replies Under Seal (Doc. 89) is

**DENIED**; and

(2) Plaintiff's Motion to Vacate Confidential Designations (Doc. 82) is

**DENIED WITHOUT PREJUDICE**, subject to refiling consistent with

the Court's above admonitions.

**IT IS SO ORDERED.**

*s/ Michael R. Barrett*
_____
Hon. Michael R. Barrett
United States District Judge